Brian N. Platt (#17099)
bplatt@wnlaw.com
Collin W. Hansen (#18949)
chansen@wnlaw.com
**WORKMAN NYDEGGER**
60 East South Temple Suite 1000
Salt Lake City, UT 84111
Telephone: (801) 533-9800
Facsimile: (801) 328-1707

*Attorneys for Plaintiff The Lovesac Company*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE LOVESAC COMPANY,<br><br>*Plaintiff,*<br><br>v.<br><br>YOK RITH LIMITED *dba* BELFFIN,<br><br>*Defendant.* | Case No: 2:25-cv-55<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff The Lovesac Company ("Plaintiff" or "Lovesac") brings the following claims against Defendant Yok Rith Limited *dba* Belffin ("Defendant" or "Belffin") for patent infringement.

### SUMMARY OF THE ACTION

1. Lovesac was founded in 1995, when founder Shawn Nelson built the original eight-foot-wide foam filled "Lovesac" in the basement of his parents' Utah home.

2. Lovesac is a Delaware company that designs, manufactures, and sells, among other things, modular furniture.

3.     Lovesac owns numerous patents associated with its innovative furniture designs, including United States Patent Nos. 7,213,885 (the "'885 Patent"), 7,963,612 (the "'612 Patent"), 10,806,261 (the "'261 Patent"), 10,123,623 (the "'623 Patent"), and 11,253,073 (the "'073 Patent") (collectively, the "Asserted Patents," attached hereto as Exhibits A-E respectively).

4.     Lovesac's patented Sactionals® line of modular furniture introduced interchangeable components designed so that numerous different product configurations could be created using a selection of modular components.

5.     The Sactionals innovative, patented systems leverage the interchangeability of its base and side components to allow for the construction of dozens of possible configurations, a few of which are shown below.



6.     In addition to being modular and reconfigurable, Sactionals separate back and side

pieces make Sactionals the perfect fit for smaller spaces where traditional non-modular furniture would be difficult to move or install.

7.    Recently, Defendant Belffin began manufacturing, importing, offering for sale, and/or selling numerous modular furniture products in the United States that infringe the Asserted Patents (collectively, the "Infringing Products").

8.    An example of one of these Infringing Products is shown below in the images taken from the Amazon product listing for the Belffin "Modular Sectional Sofa with Storage Ottoman Oversized U Shaped Sofa Set Modular Sofa with Reversible Chaises":











https: https://www.amazon.com/Belfffin-Reversible-Storage-Sectional-Ottomans/dp/B0BYD5YD8T

9.     Belffin sells the Infringing Products across the United States through its own website and through third-party retailers like Amazon and Walmart.

4

10.     After learning of this infringement, Plaintiff sent two cease-and-desist letters to Belffin, but Belffin's infringement has continued unabated.

11.     Belffin's egregious and ongoing misconduct constitutes willful patent infringement. Among other relief, Lovesac seeks damages and an injunction against Belffin from further infringement of Lovesac's patented technology.

## PARTIES

12.     Plaintiff The Lovesac Company is a Delaware corporation with a principal place of business at 2 Landmark Square, Suite 300 Stamford, CT 06901. Lovesac maintains numerous established places of business, including retail business locations in this judicial district including, for example, a retail store location at 6191 S State St, Murray, UT 84107.

13.     Defendant Yok Rith Limited *dba* Belffin is a Hong Kong limited company with a principal business address at Room D, 10/F, Union Way Commercial Centre, 283 Queen's Road Central Shueng Wan, Hong Kong.

## JURISDICTION AND VENUE

14.     This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. §§ 100 *et seq*.

15.     Defendant markets and sells all of its products, including the Infringing Products, to consumers across the United States, including in Utah, through their own website, through Amazon.com, and through other third-party retailers.

16.     Additionally, Defendant has an interactive website that allows customers to order and ship Infringing Products to Utah.

17.     On information and belief, Belffin markets the Infringing Products to a nationwide audience, stands ready and willing to do business with Utah residents, has marketed and sold Infringing Products to Utah residents, and has moved Infringing Products along a stream of commerce designed for retail sale through the United States, including Utah.

18.     For the foregoing reasons, this Court has personal jurisdiction over Belffin, and venue is proper in this District pursuant to 28 U.S.C. § 1391(c)(3), because Belffin is not a resident in the United States and may be sued in any judicial district.

## BACKGROUND

19.     Lovesac was founded in 1995, when founder Shawn Nelson built the original eight-foot-wide foam filled "Lovesac" in the basement of his parents' Utah home.  Shawn would turn his passion into the company called Lovesac, named after the original nylon Lovesac built in 1995.



20.     In the early 2000s, Lovesac continued its innovative approach to furniture, and in 2005 invented an entirely new category of modular furniture.  Lovesac's Sactionals line of modular furniture introduced interchangeable furniture components designed to allow for different configurations using a selection of modular components.  Lovesac sought patents covering its innovative new design beginning in June 2005.

6

21.    As the specification for the '885 Patent explains, customers appreciate furniture that can be easily cleaned, moved, and stored with ease, and which provides multiple functions.  *See, e.g.*, '885 Patent (Ex. A), at 1:24-53. One aspect of the '885 Patent related to a "modular furniture assembly that can be assembled, disassembled, rearranged, moved, and cleaned in a quick and efficient manner with minimal effort."  *See, e.g.*, '885 Patent (Ex. A), at 1:57-59.

22.    According to one aspect of the '885 Patent, "base(s) and transverse member(s) can be placed in a variety of different positions so as to form a variety of different chairs."  *See, e.g.*, '885 Patent (Ex. A) at 2:15-17.  The Patent describes this relationship as follows:

> In one embodiment, the base and transverse member are sized and configured in a defined spatial relationship. For example, in such an embodiment, the length (x) of the base is substantially equal to the length (x) of the transverse member, and the length (x) of the base is Substantially equal to the sum of the width (y) of the base and the width (z) of the transverse member. Thus, x is substantially equal to y+z. This relationship enables the convenient formation of a variety of different types, sizes and configurations of furniture assemblies.

*See*, *e.g.*, '885 Patent (Ex. A) at 2:18-23.  The patent illustrates an example of this spatial relationship in Figure 1.



**Fig. 1**

*See*, *e.g.*, '885 Patent (Ex. A) at Fig. 1. The '885 Patent discloses that this "standardized configuration of bases and transverse members enables a user to form a variety of different types and configurations of furniture assemblies." *See*, *e.g.*, '885 Patent (Ex. A) at 2:30-33.

23. The '885 Patent discloses other benefits of the Sactionals innovative design. For example, the '885 Patent discloses that such configurations are advantageous in manufacturing, "because a manufacturer can produce a series of bases that have a substantially similar configuration and a series of transverse members that have a substantially similar configuration, then arrange (or allow the end user to arrange) the bases and transverse members into a variety of configurations to form different types of furniture." *See*, *e.g.*, '885 Patent (Ex. A) at 2:34-40. This innovative design also permits a manufacturer or retailer to stock just two pieces of furniture: a base and a transverse member. *See*, *e.g.*, '885 Patent (Ex. A) at 2:8-10.

24. This flexibility is also advantageous to the customer, who can combine bases and transverse members into many different configurations. *See*, *e.g.*, '885 Patent (Ex. A) at 2:40-43.

25.    The '885 Patent further discloses that the modular nature of the claimed invention is useful in moving furniture pieces into place:

> [T]he present invention enables the consumer to have a piece of furniture in a remote location where previously other pieces of furniture could not be moved due to their bulkiness and/or size. The present invention is easily disassembled, thus enabling a consumer to locate the base(s) and/or transverse member(s) in an otherwise inaccessible location and then assemble them to form a furniture assembly.

*See*, *e.g.*, '885 Patent (Ex. A) at 3:1-8.

26.    In addition, the claimed invention of the '885 Patent also includes "removable outer liners" for the transverse members and the base, which allows a customer to easily clean and launder the modular furniture assembly.  *See*, *e.g.*, '885 Patent (Ex. A) at 3:18-20.

27.    The '885 Patent further discloses exemplary coupler devices that allow the bases and transverse members to be configured in numerous different ways, as shown below:



*See*, *e.g.*, '885 Patent (Ex. A) at Figure 8.

28.    The Lovesac Sactionals product has received numerous positive reviews from critics and influencers alike.  For example, in one review titled *Lovesac Sactional Review 2024: 6 Years and Still Happy*, a reviewer summarized their opinion as follows:

> The Lovesac Sactional is the most versatile couch I have ever owned. It is also the most durable. I bought my first Sactional back in July of 2013. Just recently I bought another back and seat to expand it as my family is growing. Although this furniture isn't cheap, you definitely get what you pay for which is quality that will stand the test of time and kids.

Ben Trapskin, *Lovesac Sactional Review*, The Sleep Sherpa, Aug. 18, 2024, available at https://sleepsherpa.com/lovesac-sactional-review-recommendation-4-years/ (Ex. F).

29.    Another reviewer made similar comments regarding the Lovesac Sactionals product, giving high praise:

> [Lovesac Sactionals] claims to be the world's most adaptable couch and, honestly, it just may be. The Lovesac Sactionals are comprised of combinable pieces, with "seats" (where you sit) and "sides" (the back and arms). The couches are endlessly customizable (they fit together like puzzle pieces), with the possibility to start small and add to it over time.

Bailey Berg, *Couch Review: Lovesac Sactional*, Architectural Digest, February 23, 2024, available at https://www.architecturaldigest.com/story/lovesac-sactional-review, (Ex. G).

30.    On information and belief, Belffin began manufacturing and selling furniture on or around early 2024, including infringing modular sofa products:





**REARRANGEABLE**

Countless configurations to fit every environment



**Easy to assemble**
Easy to install, no tools required,very easy to follow instructions to assemble.

https://belffin.com/products/belffin-2-seats-4-sides-oversized-modular-chenille-loveseat-cloud-sofa-with-large-storage-seat

31.     Belffin advertises on their website that the "Modular sectional sofa is made up with three individual modules, which are Armrest/Backrest, Middle, [and] Ottoman Modules." *See* https://belffin.com/products/belffin-modular-terry-sides. "They can be easily re-unioned [sic] depending on your different needs. You can always add more modules here if in need." *Id.*

32.     In total, Belffin lists more than one-hundred products its website that are different combinations of the same three components in multiple color and fabric variations.

33.    Belffin's naming conventions are also not consistent across its online listings. For instance, Belffin's store on Amazon.com lists over one-hundred products that are also different combinations of the "Armrest/Backrest," "Middle," and "Ottoman Modules." Yet, despite including the same combination of these pieces in the same color and fabric, Belffin lists the products under different names.

34.    One or more products from at least the Belffin Modular Chenille, Belffin Modular Chenille Tufted, Belffin Modular Corduroy, Belffin Modular Leather, Belffin Modular Terry, Belffin Modular Velvet, Belffin Modular Weave, and Belffin Modular Wide-Ribbed Corduroy lines (collectively, "Infringing Modular Products") infringe the '885 Patent.

35.    One or more products from at least the Belffin Modular Chenille, Belffin Modular Chenille Tufted, Belffin Modular Corduroy, and Belffin Modular Weave lines (collectively, "Infringing Dimensional Products") infringe the '612 Patent.

36.    One or more products from at least the Belffin Modular Chenille, Belffin Modular Chenille Tufted, Belffin Modular Corduroy, Belffin Modular Leather, Belffin Modular Terry, Belffin Modular Velvet, and Belffin Modular Weave lines (collectively, "Infringing Coupler Products") infringe the '261 Patent and the '623 Patent.

37.    One or more products from at least the Belffin Modular, Belffin Modular Chenille Tufted, Belffin Modular Corduroy, Belffin Modular Leather, Belffin Modular Terry, Belffin Modular Velvet, Belffin Modular Velvet Tufted, and Belffin Modular Weave lines (collectively, "Infringing Storage Products") infringe the '073 Patent.

38.    For simplicity, Plaintiff will use the *Belffin 6 Seats + 6 Sides Modular Weave Sofa with Storage Seat* as a representative infringing product herein (the "Representative Infringing

Product"), because it infringes each representative claim of each of the Asserted Patents. *See* https://belffin.com/products/belffin-6-seats-6-sides-modular-weave-sofa-with-storage-seat.

### FIRST CLAIM FOR RELIEF
**Patent Infringement of U.S. Patent No. 7,213,885**
**35 U.S.C. § 271(a)**

39.     Lovesac incorporates preceding paragraphs 1-38 as if fully set forth herein.

40.     On May 8, 2007, the United States Patent Office duly and legally issued the '885 Patent.  The '885 Patent is valid, enforceable, and was issued in full compliance with Title 35 of the United States Code. A true and correct copy of the '885 Patent is attached as Exhibit A.

41.     Lovesac owns the '885 Patent by assignment.

42.     Belffin has been directly infringing, and continues to directly infringe, one or more claims of the '885 Patent literally or by the doctrine of equivalents in at least this District by making, using, offering to sell, selling, and/or importing, without limitation, at least the Infringing Modular Products without authorization or permission from Lovesac. On information and belief, numerous other devices that infringe the claims of the '885 Patent have been made, used, sold, imported, and offered for sale by Belffin.

43.     Lovesac marks its products that practice the claimed invention of the '885 Patent in compliance with 35 U.S. Code § 287, and thus Belffin had constructive notice of the '885 Patent.

44.     Lovesac also provided actual notice to Belffin of its infringement of the '885 Patent prior to the filing of this lawsuit.  Belffin also has actual notice of its infringement of the '885 Patent based on the filing and service of this Complaint.

45.     As a non-limiting example, set forth below is an exemplary infringement claim chart for claim 1 of the '885 Patent in connection with the Representative Infringing Product

showing how the Representative Infringing Product, and thus all the Infringing Modular Products, comprise each and every element of at least claim 1 of the '885 Patent. This claim chart is based on publicly available information, and Lovesac reserves the right to modify this claim chart, including, for example, on the basis of information about Infringing Modular Products that Lovesac obtains in discovery.

| US 7,213,885 | Accused Product |
|---|---|
| **Claim 1** | |
| 1. A **modular furniture assembly**, comprising: | https://belffin.com/products/belffin-6-seats-6-sides-modular-weave-sofa-with-storage-seat<br>*See also* https://www.amazon.com/Belffin-Reversible-Storage-Sectional-Ottomans/dp/B0BYD6VXHT<br><br>*See* Exhibit H – Belffin Modular Sofa Instructions |

| | |
|---|---|
| a **base** comprising a frame assembly **and at least one foot coupled to an underside of the frame assembl**y, |  |
| wherein the at **least one foot elevates at least a portion of the frame assembly above a floor** upon which the base is positioned, | |
| the frame assembly having at **least one aperture formed therein**; | |

| | |
|---|---|
| a **transverse member** comprising a frame assembly and **at least one foot coupled to an underside of the frame assembly of the transverse member**, | |
| wherein the **at least one foot of the transverse member elevates the frame assembly of the transverse member above the floor**, | |
| the transverse member **having at least one aperture formed therein**; and | |



**a coupler detachably coupling the transverse member to the base** when the base and the transverse member are positioned on the floor **and the apertures of the base and the transverse member are substantially aligned,**

wherein the transverse member can be detachably coupled to the base in a first position with respect to the base so as to form a **first furniture assembly,**



| | |
|---|---|
| and wherein the transverse member can be detachably coupled to the base in a second position with respect to the base so as to form a **second furniture assembly**, |  |
| wherein the coupler is **pushed downward** coupling the transverse member to the base thereby allowing the coupler to be inserted or removed while the base and the transverse member are positioned on the floor in an upright orientation. | |

46.    Additionally, and/or alternatively, Belffin has indirectly infringed and continues to indirectly infringe one or more claims of the '885 Patent, including at least exemplary claim 1, in violation of 35 U.S.C. § 271(b), by actively inducing users of Infringing Modular Products to directly infringe the asserted claims of the '885 Patent.  In particular, (a) Belffin has actual knowledge of the '885 Patent, (b) Belffin intentionally causes, urges, or encourages users of Infringing Modular Products to directly infringe one or more claims of the '885 Patent by promoting, advertising, and instructing customers and potential customers about Infringing Modular Products and uses thereof, including infringing uses, (c) Belffin knows (or should know) that its actions will induce users of Infringing Modular Products to directly infringe one or more claims of the '885 Patent, and (d) users of Infringing Modular Products directly infringe one or

more claims of the '885 Patent, including at least exemplary claim 1.  For example, at a minimum, Belffin supplied and continues to supply Infringing Modular Products to customers while knowing that use of Infringing Modular Products infringes one or more claims of the '885 Patent and that Belffin's customers then directly infringe one or more claims of the '885 Patent by installing and/or using Infringing Modular Products in accordance with Belffin's product literature. *See* Exhibit H – Belffin Modular Sofa Instructions.  As another example, Belffin has supplied and continues to supply Infringing Modular Products to customers while knowing that use of these products will infringe one or more claims of the '885 Patent and that Belffin's customers directly infringe one or more claims of the '885 Patent by using Infringing Modular Products in accordance with Belffin's product literature.

47.    Additionally, and/or alternatively, Belffin has indirectly infringed and continues to indirectly one or more claims of the '885 Patent, including at least exemplary claim 1, in violation of 35 U.S.C. § 271(c), by offering to sell or selling within the United States, and/or importing into the United States, components in connection with Infringing Modular Products that contribute to the direct infringement of the '885 Patent by users of Infringing Modular Products.  In particular, (a) Belffin has actual knowledge of the '885 Patent, (b) Belffin offers for sale, sells, and/or imports, in connection with Infringing Modular Products, one or more material components of the invention of the '885 Patent that are not staple articles of commerce suitable for substantial non-infringing use, (c) Belffin knows (or should know) that such component(s) were especially made or especially adapted for use in an infringement of the '885 Patent, and (d) users of devices that comprise such material component(s) directly infringe one or more claims of the '885 Patent, including at least exemplary claim 1. For example, at a minimum, Belffin offers for sale, sells, and/or imports

Infringing Modular Products that meet one or more claims of the '885 Patent. The components of Infringing Modular Products are material components of the devices that meet the one or more claims of the '885 Patent. Further, Belffin specially made and/or adapted the components of Infringing Modular Products for use in devices that meet the one or more claims of the '885 Patent, and the components of Infringing Modular Products are not a staple article of commerce suitable for substantial non-infringing use. Belffin's customers directly infringe one or more claims of the '885 Patent by installing and/or using the components of Infringing Modular Products.

48.    Belffin's infringement of the '885 Patent has been and is willful because Belffin (a) had actual knowledge of the '885 Patent, (b) engaged in the aforementioned activity despite an objectively high likelihood that Belffin's actions constituted infringement of the '885 Patent, and (c) this objectively-defined risk was either known or so obvious that it should have been known to Belffin.

49.    Additional allegations regarding Belffin's pre-suit knowledge of the '885 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

50.    Lovesac is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '885 Patent.

51.    Lovesac is entitled to recover from Belffin all damages that Lovesac has sustained as a result of Belffin's infringement of the '885 Patent, including, without limitation, a reasonable royalty and lost profits.

52.    Belffin's infringement of the '885 Patent was and continues to be willful and deliberate, entitling Lovesac to enhanced damages.

53.     Belffin's infringement of the '885 Patent is exceptional and entitles Lovesac to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

54.     Belffin's infringement of the '885 Patent has caused irreparable harm (including the loss of market share) to Lovesac and will continue to do so unless enjoined by this Court.

**SECOND CLAIM FOR RELIEF**
**Patent Infringement of U.S. Patent No. 7,963,612**
**35 U.S.C. § 271(a)**

55.     Lovesac incorporates by reference and re-alleges paragraphs 1-38 as if fully set forth herein.

56.     On June 21, 2011, the United States Patent Office duly and legally issued the '612 Patent.  The '612 Patent is valid, enforceable, and was issued in full compliance with Title 35 of the United States Code. A true and correct copy of the '612 Patent is attached as Exhibit B.

57.     Lovesac owns the '612 Patent by assignment.

58.     Belffin has been directly infringing, and continues to directly infringe, one or more claims of the '612 Patent literally or by the doctrine of equivalents in at least this District by making, using, offering to sell, selling, and/or importing, without limitation, at least the Infringing Dimensional Products without authorization or permission from Lovesac. On information and belief, numerous other devices that infringe one or more claims of the '612 Patent have been made, used, sold, imported, and offered for sale by Belffin.

59.     Lovesac marks its products that practice the claimed invention of the '612 Patent in compliance with 35 U.S. Code § 287, and thus Belffin had constructive notice of the '612 Patent.

60.   Lovesac also provided actual notice to Belffin of its infringement of the '612 Patent prior to the filing of this lawsuit.  Belffin also has actual notice of its infringement of the '612 Patent based on the filing and service of this Complaint.

61.   As a non-limiting example, set forth below is an exemplary infringement claim chart for claim 8 of the '612 Patent in connection with the Representative Infringing Product showing how the Representative Infringing Product, and thus all the Infringing Dimensional Products, comprise each and every element of at least claim 8 of the '612 Patent.  This claim chart is based on publicly available information, and Lovesac reserves the right to modify this claim chart, including, for example, on the basis of information about Infringing Dimensional Products that Lovesac obtains in discovery.

| US 7,963,612 | Accused Product |
|---|---|
| **Claim 8** ||
| 8. A **modular furniture assembly** comprising: | <br>https://belffin.com/products/belffin-6-seats-8-sides-modular-weave-sofa-with-storage-seat?variant=47124401291568<br>*See also* https://www.amazon.com/Belffin-Modular-Sectional-Reversible-Ottomans/dp/B0BYD7VYJM |



| | |
|---|---|
| | **INSTRUCTIONS** 197<br><br>Modular Sofa<br><br>**Belffin** ENJOY LIVING · BETTER LIFE |
| | *See* Exhibit H – Belffin Modular Sofa Instructions |
| a **base member having a rectangular shape**, the base member having a **length "B"**; | B = 26" |
| at least one **first transverse member** having a rectangular shape, the first transverse member having (i) **a length "A"** and (ii) **a width "C"**; | A = 31.9"<br>C = 5.5" |

| | |
|---|---|
| at least **one second transverse member** having a rectangular shape, the second transverse member having **a length that is equal to "B"**; and (ii) **a width "C"**, | <br>B = 26.4"<br>C = 5.5" |
| wherein the length "A" is greater than the length "B"; | A > B<br>31.9" > 26.4" |
| a **first coupler** removably **coupling the at least one first transverse member to the base member**; and | |
| a **second coupler** removably coupling the at least one **second transverse member to the base member**; | |

|  |  |
|---|---|
| wherein "A" is substantially equal to the sum of "B" and "C"; and | |

| wherein **a height of the at least one first transverse member and a height of the at least one second transverse member are substantially greater than a height of the base member**. |  |

62.    Additionally, and/or alternatively, Belffin has indirectly infringed and continues to indirectly infringe one or more claims of the '612 Patent, including at least exemplary claim 8, in violation of 35 U.S.C. § 271(b), by actively inducing users of Infringing Dimensional Products to directly infringe the asserted claims of the '612 Patent.  In particular, on information and belief, (a) Belffin has actual knowledge of the '612 Patent, (b) Belffin intentionally causes, urges, or encourages users of Infringing Dimensional Products to directly infringe one or more claims of the '612 Patent by promoting, advertising, and instructing customers and potential customers about Infringing Dimensional Products and uses thereof, including infringing uses, (c) Belffin knows (or should know) that its actions will induce users of Infringing Dimensional Products to directly infringe one or more claims the '612 Patent, and (d) users of Infringing Dimensional Products directly infringe one or more claims of the '612 Patent, including at least exemplary claim 8.  For example, at a minimum, Belffin supplied and continues to supply Infringing Dimensional Products to customers while knowing that use of Infringing Dimensional Products infringes one or more claims of the '612 Patent and that Belffin's customers then directly infringe one or more claims of the '612 Patent by installing and/or using the Infringing Dimensional Products in accordance with Belffin's product literature.  *See* Exhibit H – Belffin Modular Sofa Instructions.  As another

example, Belffin has supplied and continues to supply Infringing Dimensional Products to customers while knowing that use of these products will infringe one or more claims of the '612 Patent and that Belffin's customers directly infringe one or more claims of the '612 Patent by using Infringing Dimensional Products in accordance with Belffin's product literature.

63.    Additionally, and/or alternatively, Belffin has indirectly infringed and continues to indirectly infringe one or more of the claims of the '612 Patent, including at least exemplary claim 8, in violation of 35 U.S.C. § 271(c), by offering to sell or selling within the United States, and/or importing into the United States, components in connection with Infringing Dimensional Products that contribute to the direct infringement of the '612 Patent by users of Infringing Dimensional Products.  In particular, (a) Belffin has actual knowledge of the '612 Patent, (b) Belffin offers for sale, sells, and/or imports, in connection with Infringing Dimensional Products, one or more material components of the invention of the '612 Patent that are not staple articles of commerce suitable for substantial non-infringing use, (c) Belffin knows (or should know) that such component(s) were especially made or especially adapted for use in an infringement of the '612 Patent, and (d) users of devices that comprise such material component(s) directly infringe one or more claims of the '612 Patent,  including at least exemplary claim 8. For example, at a minimum, Belffin offers for sale, sells, and/or imports Infringing Dimensional Products that meet one or more claims of the '612 Patent.  The components of Infringing Dimensional Products are material components of the devices that meet the one or more claims of the '612 Patent. Further, Belffin specially made and/or adapted the components of Infringing Dimensional Products for use in devices that meet the one or more claims of the '612 Patent, and the components of Infringing Dimensional Products are not a staple article of commerce suitable for substantial non-infringing

use.  Belffin's customers directly infringe one or more claims of the '612 Patent by installing and/or using the components of Infringing Dimensional Products.

64.    Belffin's infringement of the '612 Patent has been and is willful because Belffin (a) had actual knowledge of the '612 Patent, (b) engaged in the aforementioned activity despite an objectively high likelihood that Belffin's actions constituted infringement of the '612 Patent, and (c) this objectively-defined risk was either known or so obvious that it should have been known to Belffin.

65.    Additional allegations regarding Belffin's pre-suit knowledge of the '612 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

66.    Lovesac is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '612 Patent.

67.    Lovesac is entitled to recover from Belffin all damages that Lovesac has sustained as a result of Belffin's infringement of the '612 Patent, including, without limitation, a reasonable royalty and lost profits.

68.    Belffin's infringement of the '612 Patent was and continues to be willful and deliberate, entitling Lovesac to enhanced damages.

69.    Belffin's infringement of the '612 Patent is exceptional and entitles Lovesac to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

70.    Belffin's infringement of the '612 Patent has caused irreparable harm (including the loss of market share) to Lovesac and will continue to do so unless enjoined by this Court.

### THIRD CLAIM FOR RELIEF
### Patent Infringement of U.S. Patent No. 10,806,261
### 35 U.S.C. § 271(a)

71.     Lovesac incorporates by reference and re-alleges paragraphs 1-38 as if fully set forth herein.

72.     On June 21, 2011, the United States Patent Office duly and legally issued the '261 Patent.  The '261 Patent is valid, enforceable, and was issued in full compliance with Title 35 of the United States Code. A true and correct copy of the '261 Patent is attached as Exhibit C.

73.     Lovesac owns the '261 Patent by assignment.

74.     Belffin has been directly infringing, and continues to directly infringe, one or more claims of the '261 Patent literally or by the doctrine of equivalents in at least this District by making, using, offering to sell, selling, and/or importing, without limitation, at least the Infringing Coupler Products without authorization or permission from Lovesac. On information and belief, numerous other devices that infringe one or more claims of the '261 Patent have been made, used, sold, imported, and offered for sale by Belffin.

75.     Lovesac marks its products that practice the claimed invention of the '261 Patent in compliance with 35 U.S. Code § 287, and thus Belffin had constructive notice of the '261 Patent.

76.     Lovesac also provided actual notice to Belffin of its infringement of the '261 Patent prior to the filing of this lawsuit. Belffin also has actual notice of its infringement of the '261 Patent based on the filing and service of this Complaint.

77.     As a non-limiting example, set forth below is an exemplary infringement claim chart for claim 6 of the '261 Patent in connection with the Representative Infringing Product showing how the Representative Infringing Product, and thus all the Infringing Coupler Products,

comprise each and every element of at least claim 6 of the '262 Patent. This claim chart is based

on publicly available information, and Lovesac reserves the right to modify this claim chart,

including, for example, on the basis of information about Infringing Coupler Products that Lovesac

obtains in discovery.

| US 10,806,261 | Accused Product |
|---|---|
| **Claim 6** | |
| 6. A **modular furniture assembly** comprising: |  https://belffin.com/products/belffin-6-seats-6-sides-modular-weave-sofa-with-storage-seat *See also* https://www.amazon.com/Belffin-Reversible-Storage-Sectional-Ottomans/dp/B0BYD6VXHT *See* Exhibit H – Belffin Modular Sofa Instructions |

| | |
|---|---|
| A planar **base member** having a generally rectangular shape; |  |
| a planar **transverse member** having a generally rectangular shape, | |
| wherein the **height of the transverse member is substantially greater than the height of the planar base member**; and | |

| a **coupler configured to selectively couple the planar base member to the planar transverse member**. |  |
|---|---|

78.     Additionally, and/or alternatively, Belffin has indirectly infringed and continues to indirectly infringe one or more claims of the '261 Patent, including at least exemplary claim 6, in violation of 35 U.S.C. § 271(b), by actively inducing users of Infringing Coupler Products to directly infringe the asserted claims of the '261 Patent.  In particular, on information and belief, (a) Belffin has actual knowledge of the '261 Patent, (b) Belffin intentionally causes, urges, or encourages users of Infringing Coupler Products to directly infringe one or more claims of the '261 Patent by promoting, advertising, and instructing customers and potential customers about Infringing Coupler Products and uses thereof, including infringing uses, (c) Belffin knows (or should know) that its actions will induce users of Infringing Coupler Products to directly infringe one or more claims the '261 Patent, and (d) users of Infringing Coupler Products directly infringe

one or more claims of the '261 Patent, including at least exemplary claim 6. For example, at a minimum, Belffin supplied and continues to supply Infringing Coupler Products to customers while knowing that use of Infringing Coupler Products infringes one or more claims of the '261 Patent and that Belffin's customers then directly infringe one or more claims of the '261 Patent by installing and/or using Infringing Coupler Products in accordance with Belffin's product literature. *See* Exhibit H – Belffin Modular Sofa Instructions. As another example, Belffin has supplied and continues to supply Infringing Coupler Products to customers while knowing that use of these products will infringe one or more claims of the '261 Patent and that Belffin's customers directly infringe one or more claims of the '261 Patent by using Infringing Coupler Products in accordance with Belffin's product literature.

79. Additionally, and/or alternatively, Belffin has indirectly infringed and continues to indirectly infringe one or more of the claims of the '261 Patent, including at least exemplary claim 6, in violation of 35 U.S.C. § 271(c), by offering to sell or selling within the United States, and/or importing into the United States, components in connection with Infringing Coupler Products that contribute to the direct infringement of the '261 Patent by users of Infringing Coupler Products. In particular, (a) Belffin has actual knowledge of the '261 Patent, (b) Belffin offers for sale, sells, and/or imports, in connection with Infringing Coupler Products, one or more material components of the invention of the '261 Patent that are not staple articles of commerce suitable for substantial non-infringing use, (c) Belffin knows (or should know) that such component(s) were especially made or especially adapted for use in an infringement of the '261 Patent, and (d) users of devices that comprise such material component(s) directly infringe one or more claims of the '261 Patent, including at least exemplary claim 6. For example, at a minimum, Belffin offers for sale, sells,

and/or imports Infringing Coupler Products that meet one or more claims of the '261 Patent. The components of Infringing Coupler Products are material components of the devices that meet the one or more claims of the '261 Patent. Further, Belffin specially made and/or adapted the components of Infringing Coupler Products for use in devices that meet the one or more claims of the '261 Patent, and the components of Infringing Coupler Products are not a staple article of commerce suitable for substantial non-infringing use. Belffin's customers directly infringe one or more claims of the '261 Patent by installing and/or using the components of Infringing Coupler Products.

80.    Belffin's infringement of the '261 Patent has been and is willful because Belffin (a) had actual knowledge of the '261 Patent, (b) engaged in the aforementioned activity despite an objectively high likelihood that Belffin's actions constituted infringement of the '261 Patent, and (c) this objectively-defined risk was either known or so obvious that it should have been known to Belffin.

81.    Additional allegations regarding Belffin's pre-suit knowledge of the '261 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

82.    Lovesac is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '261 Patent.

83.    Lovesac is entitled to recover from Belffin all damages that Lovesac has sustained as a result of Belffin's infringement of the '261 Patent, including, without limitation, a reasonable royalty and lost profits.

84.    Belffin's infringement of the '261 Patent was and continues to be willful and deliberate, entitling Lovesac to enhanced damages.

85.    Belffin's infringement of the '261 Patent is exceptional and entitles Lovesac to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

86.    Belffin's infringement of the '261 Patent has caused irreparable harm (including the loss of market share) to Lovesac and will continue to do so unless enjoined by this Court.

### FOURTH CLAIM FOR RELIEF
**Patent Infringement of U.S. Patent No. 10,123,623**
**35 U.S.C. § 271(a)**

87.    Lovesac incorporates by reference and re-alleges paragraphs 1-38 as if fully set forth herein.

88.    On November 13, 2018, the United States Patent Office duly and legally issued the '623 Patent.  The '623 Patent is valid, enforceable, and was issued in full compliance with Title 35 of the United States Code. A true and correct copy of the '623 Patent is attached as Exhibit D.

89.    Lovesac owns the '623 Patent by assignment.

90.    Belffin has been directly infringing, and continues to directly infringe, one or more claims of the '623 Patent literally or by the doctrine of equivalents in at least this District by making, using, offering to sell, selling, and/or importing, without limitation, at least the Infringing Coupler Products without authorization or permission from Lovesac. On information and belief, numerous other devices that infringe one or more claims of the '623 Patent have been made, used, sold, imported, and offered for sale by Belffin.

91.    Lovesac marks its products that practice the claimed invention of the '623 Patent in compliance with 35 U.S. Code § 287, and thus Belffin had constructive notice of the '623 Patent.

92.    Lovesac also provided actual notice to Belffin of its infringement of the '623 Patent prior to the filing of this lawsuit.  Belffin also has actual notice of its infringement of the '623 Patent based on the filing and service of this Complaint.

93.    As a non-limiting example, set forth below is an exemplary infringement claim chart for claim 1 of the '623 Patent in connection with the Representative Infringing Product showing how the Representative Infringing Product, and thus all the Infringing Coupler Products, comprise each and every element of at least claim 1 of the '623 Patent.  This claim chart is based on publicly available information, and Lovesac reserves the right to modify this claim chart, including, for example, on the basis of information about Infringing Coupler Products that Lovesac obtains in discovery.

| US 10,123,623 | Accused Product |
|---|---|
| **Claim 1** | |
| 1. A **modular furniture assembly** comprising: |  https://belffin.com/products/belffin-6-seats-6-sides-modular-weave-sofa-with-storage-seat<br>*See also* https://www.amazon.com/Belffin-Reversible-Storage-Sectional-Ottomans/dp/B0BYD6VXHT |

| | |
|---|---|
| |  *See* Exhibit H – Belffin Modular Sofa Instructions |
| a **base member providing a seating surface**; | |
| a **transverse member having a height that is substantially greater than the height of the seating surface of the base member**; | |

| | |
|---|---|
| a **first coupler** configured to selectively couple the base member to the transverse member; and |  |
| a **second coupler, spaced apart from the first coupler**, the second coupler being configured to selectively couple the base member to the transverse member, |  |

|  |  |
|---|---|
|  | https://www.amazon.com/Belffin-Reversible-Storage-Sectional-Ottomans/dp/B0BYD6VXHT |
| wherein the **second coupler** is positioned **lower than the first coupler**, so as to selectively couple together a lower portion of the base member to a lower portion of the transverse member; |  |

| wherein the **first coupler** selectively couples together a **higher portion of the base member** to a higher portion of the transverse member. |  |
| --- | --- |

94.     Additionally, and/or alternatively, Belffin has indirectly infringed and continues to indirectly infringe one or more claims of the '623 Patent, including at least exemplary claim 1, in violation of 35 U.S.C. § 271(b), by actively inducing users of Infringing Coupler Products to directly infringe the asserted claims of the '623 Patent.  In particular, on information and belief, (a) Belffin has actual knowledge of the '623 Patent, (b) Belffin intentionally causes, urges, or encourages users of Infringing Coupler Products to directly infringe one or more claims of the '623 Patent by promoting, advertising, and instructing customers and potential customers about Infringing Coupler Products and uses thereof, including infringing uses, (c) Belffin knows (or should know) that its actions will induce users of Infringing Coupler Products to directly infringe one or more claims the '623 Patent, and (d) users of Infringing Coupler Products directly infringe

one or more claims of the '623 Patent, including at least exemplary claim 1.  For example, at a minimum, Belffin supplied and continues to supply Infringing Coupler Products to customers while knowing that use of Infringing Coupler Products infringes one or more claims of the '623 Patent and that Belffin's customers then directly infringe one or more claims of the '623 Patent by installing and/or using Infringing Coupler Products in accordance with Belffin's product literature. *See* Exhibit H – Belffin Modular Sofa Instructions.  As another example, Belffin has supplied and continues to supply Infringing Coupler Products to customers while knowing that use of these products will infringe one or more claims of the '623 Patent and that Belffin's customers directly infringe one or more claims of the '623 Patent by using Infringing Coupler Products in accordance with Belffin's product literature.

94.  Additionally, and/or alternatively, Belffin has indirectly infringed and continues to indirectly infringe one or more claims of the '623 Patent, including at least exemplary claim 1, in violation of 35 U.S.C. § 271(c), by offering to sell or selling within the United States, and/or importing into the United States, components in connection with Infringing Coupler Products that contribute to the direct infringement of the '623 Patent by users of Infringing Coupler Products. In particular, (a) Belffin has actual knowledge of the '623 Patent, (b) Belffin offers for sale, sells, and/or imports, in connection with Infringing Coupler Products, one or more material components of the invention of the '623 Patent that are not staple articles of commerce suitable for substantial non-infringing use, (c) Belffin knows (or should know) that such component(s) were especially made or especially adapted for use in an infringement of the '623 Patent, and (d) users of devices that comprise such material component(s) directly infringe one or more claims of the '623 Patent, including at least exemplary claim 1. For example, at a minimum, Belffin offers for sale, sells,

and/or imports Infringing Coupler Products that meet one or more claims of the '623 Patent. The components of Infringing Coupler Products are material components of the devices that meet the one or more claims of the '623 Patent. Further, Belffin specially made and/or adapted the components of Infringing Coupler Products for use in devices that meet the one or more claims of the '623 Patent, and the components of Infringing Coupler Products are not a staple article of commerce suitable for substantial non-infringing use. Belffin's customers directly infringe one or more claims of the '623 Patent by installing and/or using the components of Infringing Coupler Products.

96.    Belffin's infringement of the '623 Patent has been and is willful because Belffin (a) had actual knowledge of the '623 Patent, (b) engaged in the aforementioned activity despite an objectively high likelihood that Belffin's actions constituted infringement of the '623 Patent, and (c) this objectively-defined risk was either known or so obvious that it should have been known to Belffin.

97.    Additional allegations regarding Belffin's pre-suit knowledge of the '623 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

98.    Lovesac is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '623 Patent.

99.    Lovesac is entitled to recover from Belffin all damages that Lovesac has sustained as a result of Belffin's infringement of the '623 Patent, including, without limitation, a reasonable royalty and lost profits.

100.    Belffin's infringement of the '623 Patent was and continues to be willful and deliberate, entitling Lovesac to enhanced damages.

101.    Belffin's infringement of the '623 Patent is exceptional and entitles Lovesac to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

102.    Belffin's infringement of the '623 Patent has caused irreparable harm (including the loss of market share) to Lovesac and will continue to do so unless enjoined by this Court.

**FIFTH CLAIM FOR RELIEF**
**Patent Infringement of U.S. Patent No. 11,253,073**
**35 U.S.C. § 271(a)**

103.    Lovesac incorporates by reference and re-alleges paragraphs 1-32 as if fully set forth herein.

104.    On February 22, 2022, the United States Patent Office duly and legally issued the '073 Patent.  The '073 Patent is valid, enforceable, and was issued in full compliance with Title 35 of the United States Code. A true and correct copy of the '073 Patent is attached as Exhibit E.

105.    Lovesac owns the '073 Patent by assignment.

106.    Belffin has been directly infringing, and continues to directly infringe, one or more claims of the '073 Patent literally or by the doctrine of equivalents in at least this District by making, using, offering to sell, selling, and/or importing, without limitation, at least the Infringing Storage Products without authorization or permission from Lovesac. On information and belief, numerous other devices that infringe one or more claims of the '073 Patent have been made, used, sold, imported, and offered for sale by Belffin.

107.    Lovesac marks its products that practice the claimed invention of the '073 Patent in compliance with 35 U.S. Code § 287, and thus Belffin had constructive notice of the '073 Patent.

108.    As a non-limiting example, set forth below is an exemplary infringement claim chart for claim 1 of the '073 Patent in connection with the Representative Infringing Product showing how the Representative Infringing Product, and thus all the Infringing Storage Products, comprise each and every element of at least claim 1 of the '073 Patent.  This claim chart is based on publicly available information, and Lovesac reserves the right to modify this claim chart, including, for example, on the basis of information about Infringing Storage Products that Lovesac obtains in discovery.

| US 11,253,073 | Accused Product |
|---|---|
| **Claim 1** | |
| 1. A **modular furniture assembly** comprising: | 

https://belffin.com/products/belffin-6-seats-6-sides-modular-weave-sofa-with-storage-seat
*See also* https://www.amazon.com/Belffin-Reversible-Storage-Sectional-Ottomans/dp/B0BYD6VXHT |



|  | **INSTRUCTIONS** 197 Modular Sofa<br>**Belffin** ENJOY LIVING · BETTER LIFE |
| --- | --- |
|  | *See* Exhibit H – Belffin Modular Sofa Instructions |
| a **base defining a seating surface**; | D Single Seat Frame x1 |
| a **transverse member having a hole therein**, | E Backrest x1 |

| | |
|---|---|
| wherein a **height of the transverse member is substantially greater than the height of the seating surface of the base**; |  |
| wherein the base includes a frame assembly, the frame assembly **defining a storage compartment** providing a convenient storage area in which a user can store desired items; and | <br><br>https://www.amazon.com/Belffin-Reversible-Storage-Sectional-Ottomans/dp/B0BYD6VXHT |

| | |
|---|---|
| a coupler configured to selectively couple the base to the transverse member, wherein the **coupler selectively extends through the hole of the transverse member to thereby couple the base to the transverse member**. |   |

109.    Additionally, and/or alternatively, Belffin has indirectly infringed and continues to indirectly infringe one or more claims of the '073 Patent, including at least exemplary claim 1, in violation of 35 U.S.C. § 271(b), by actively inducing users of Infringing Storage Products to directly infringe the asserted claims of the '073 Patent.  In particular, on information and belief, (a) Belffin has actual knowledge of the '073 Patent, (b) Belffin intentionally causes, urges, or encourages users of Infringing Storage Products to directly infringe one or more claims of the '073 Patent by promoting, advertising, and instructing customers and potential customers about Infringing Storage Products and uses thereof, including infringing uses, (c) Belffin knows (or should know) that its actions will induce users of Infringing Storage Products to directly infringe one or more claims the '073 Patent, and (d) users of Infringing Storage Products directly infringe one or more claims of the '073 Patent, including at least exemplary claim 1.  For example, at a minimum, Belffin supplied and continues to supply Infringing Storage Products to customers while

knowing that use of Infringing Storage Products infringes one or more claims of the '073 Patent and that Belffin's customers then directly infringe one or more claims of the '073 Patent by installing and/or using Infringing Storage Products in accordance with Belffin's product literature. *See* Exhibit H – Belffin Modular Sofa Instructions.  As another example, Belffin has supplied and continues to supply Infringing Storage Products to customers while knowing that use of these products will infringe one or more claims of the '073 Patent and that Belffin's customers directly infringe one or more claims of the '073 Patent by using Infringing Storage Products in accordance with Belffin's product literature.

110.    Additionally, and/or alternatively, Belffin has indirectly infringed and continues to indirectly infringe one or more claims of the '073 Patent, including at least exemplary claim 1, in violation of 35 U.S.C. § 271(c), by offering to sell or selling within the United States, and/or importing into the United States, components in connection with Infringing Storage Products that contribute to the direct infringement of the '073 Patent by users of Infringing Storage Products.  In particular, (a) Belffin has actual knowledge of the '073 Patent, (b) Belffin offers for sale, sells, and/or imports, in connection with Infringing Storage Products, one or more material components of the invention of the '073 Patent that are not staple articles of commerce suitable for substantial non-infringing use, (c) Belffin knows (or should know) that such component(s) were especially made or especially adapted for use in an infringement of the '073 Patent, and (d) users of devices that comprise such material component(s) directly infringe one or more claims of the '073 Patent, including at least exemplary claim 1. For example, at a minimum, Belffin offers for sale, sells, and/or imports Infringing Storage Products that meet one or more claims of the '073 Patent.  The components of Infringing Storage Products are material components of the devices that meet the

one or more claims of the '073 Patent. Further, Belffin specially made and/or adapted the components of the Infringing Storage Products for use in devices that meet the one or more claims of the '073 Patent, and the components of Infringing Storage Products are not a staple article of commerce suitable for substantial non-infringing use. Belffin's customers directly infringe one or more claims of the '073 Patent by installing and/or using the components of Infringing Storage Products.

111.    Belffin's infringement of the '073 Patent has been and is willful because Belffin (a) had constructive knowledge of the '073 Patent and actual knowledge of related patents, (b) engaged in the aforementioned activity despite an objectively high likelihood that Belffin's actions constituted infringement of the '073 Patent, and (c) this objectively-defined risk was either known or so obvious that it should have been known to Belffin.

112.    Additional allegations regarding Belffin's pre-suit knowledge of the '073 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

113.    Lovesac is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '073 Patent.

114.    Lovesac is entitled to recover from Belffin all damages that Lovesac has sustained as a result of Belffin's infringement of the '073 Patent, including, without limitation, a reasonable royalty and lost profits.

115.    Belffin's infringement of the '073 Patent was and continues to be willful and deliberate, entitling Lovesac to enhanced damages.

116. Belffin's infringement of the '073 Patent is exceptional and entitles Lovesac to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

117. Belffin's infringement of the '073 Patent has caused irreparable harm (including the loss of market share) to Lovesac and will continue to do so unless enjoined by this Court.

## DEMAND FOR JURY TRIAL

118. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Lovesac hereby demands a jury trial with respect to all issues triable by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Lovesac respectfully prays that the Court enter judgment in its favor and award the following relief against Belffin:

A. A judgment that Belffin has infringed one or more claims of each of the Asserted Patents literally and/or under the doctrine of equivalents;

B. An award of damages pursuant to 35 U.S.C. § 284;

C. Entry of an injunction against further infringement of the Asserted Patents;

D. A judgment that this is an exceptional case pursuant to 35 U.S.C. § 284 and an award of the Lovesac's reasonable attorneys' fees in this litigation;

E. An award of prejudgment and post-judgement interest on Lovesac's damages;

F. An award of costs; and

G. Any other and further relief as this court deems appropriate in law and in equity.

DATED January 24, 2025.

Respectfully submitted,

By /s/ *Brian N. Platt*
Brian N. Platt
Collin W. Hansen

*Attorneys for Plaintiff The Lovesac Company*